William **RALPH**

v.

Franklin K. **BROUGH**, Warden, Maryland Penitentiary.

Civ. No. 13693.

United States District Court
D. Maryland.

Dec. 15, 1965.

Edward L. Genn, of Silver Spring, Md., for petitioner.

Thomas B. Finan, Atty. Gen., Robert F. Sweeney, Asst. Atty. Gen., Chief, Criminal Division, and Morton A. Sacks, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

In his present petition for a writ of habeas corpus, as modified at the hearing thereon, petitioner, a State prisoner under sentence of death, contends that he was deprived of his rights under the Fourteenth Amendment to the Constitution of the United States in three respects:[1]

I. because, pursuant to Article 36 of the Declaration of Rights in the Constitution of Maryland, persons who did not believe in the existence of God were ex-

---

1. The prior proceedings in the State and Federal Courts are set out in Ralph v. State, 226 Md. 480, 174 A.2d 163 (1961), cert. den. sub nom. Ralph v. Maryland, 369 U.S. 813, 82 S.Ct. 689 (1962); Ralph v. Pepersack, D.Md., 203 F.Supp. 752 (1962); Ralph v. Warden, 230 Md. 616, 185 A.2d 366 (1962); Ralph v. Pepersack, D.Md., 218 F.Supp. 932 (1963), aff'd, Ralph v. Pepersack, 4 Cir., 335 F.2d 128 (1964), cert. den. 380 U.S. 925, 85 S.Ct. 907, 13 L.Ed.2d 811 (1965).

cluded from the grand jury which indicted him;[2]

II. because the panel of judges who tried him had been required by Article 37 of the Declaration of Rights to declare their belief in the existence of God;[3] and

III. because a confession was admitted in evidence against him, which he contends should not have been admitted, in view of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and certain cases interpreting that opinion.

I

Petitioner's first contention is based upon Schowgurow v. State, 240 Md. 121, 213 A.2d 475, decided October 11, 1965, and State v. Madison, Md., 213 A.2d 880, decided shortly thereafter, in which the Court of Appeals of Maryland held that the provisions of Article 36 of the Maryland Declaration of Rights, requiring demonstration of belief in God as a qualification for service as a grand or petit juror, violated the Fourteenth Amendment and required a reversal of the convictions in those cases.[4] However, the Court of Appeals further held that the

legal principle enunciated therein should not apply retroactively, except for convictions which had not become final before the rendition of the opinion in Schowgurow.

In Smith v. Brough, Warden, D.Md., 248 F.Supp. 435, decided yesterday, this Court held that the ruling of the Court of Appeals of Maryland that the principles enunciated in Schowgurow and Madison should not be applied retroactively, except for convictions which had not become final before the rendition of the Schowgurow opinion, did not violate any provision of the Fourteenth Amendment or any other provision of the Federal Constitution; on the contrary, that the ruling was correct, and that its application in that case to deny relief to the petitioner therein did not deprive him of due process of law or the equal protection of the laws or any other right under the United States Constitution.

The instant case differs from the Smith case only in that the petitioner herein is under sentence of death.[5]

█ For the reasons stated in Brown v. Brough, Warden, D.Md., 248 F.Supp. 342, decided today, this Court believes

2. "Article 36. Religious Freedom.
   "That as it is the duty of every man to worship God in such manner as he thinks most acceptable to Him, all persons are equally entitled to protection in their religious liberty; wherefore, no person ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights; nor ought any person to be compelled to frequent, or maintain, or contribute, unless on contract, to maintain, any place of worship, or any ministry; nor shall any person, otherwise competent, be deemed incompetent as a witness, or juror, on account of his religious belief; provided, he believes in the existence of God, and that under His dispensation such person will be held morally accountable for his acts, and be rewarded or punished therefor either in this world or in the world to come."

3. "Article 37. Religious tests as qualification for office; oath of office.
   "That no religious test ought ever to be required as a qualification for any office of profit or trust in this State, other than a declaration of belief in the existence of God; nor shall the Legislature prescribe any other oath of office than the oath prescribed by this Constitution."

4. Petitioner does not challenge the form of oath which was taken by the grand jurors, unless one or more of them elected to affirm, as permitted by Art. 1, sec. 9, of the Anno.Code of Maryland. Such a challenge would have been unavailing, for the reasons stated in footnote 2 to the opinion in Brown v. Brough, Warden, D.Md. 248 F.Supp. 342, filed today.

5. Like Smith, Ralph testified that he believes in God now and that he believed in God at the time of his trial.

that the Court of Appeals of Maryland should be given the opportunity to decide whether a different rule with respect to retroactivity should be applied in a case involving a death sentence from the rule applied in the case of a man sentenced to a term of imprisonment. This Court will therefore deny the present petition without prejudice, so that petitioner may promptly present the point under consideration to the State courts, and renew his application here if he is unsuccessful. This Court does not intimate what action it would take in that event.

## II

Petitioner's counsel argues that insofar as the trial judges sat as triers of fact, Ralph was deprived of his rights under the Fourteenth Amendment because the judges had been required to declare their belief in the existence of God by Article 37 of the Maryland Declaration of Rights, set out in note 2, above. Petitioner does not attack the composition of the Circuit Court except in its capacity as trier of fact, unless this Court should conclude that it cannot separate the functions of the Circuit Court; in that event he attacks generally the composition of the Circuit Court. This Court is unable to make the suggested separation, and treats the argument as a challenge to the composition of the Circuit Court.

■ Petitioner's argument was foreshadowed by the dissenting opinion in Madison, which said: "The reasoning of the majority carried a step further, could result: (1) in all officeholders (including the members of this Court), who declared a belief in God as a part of their official oath, being held to be unqualified to perform the duties of their office * * *." The minority added that this result "might be said to be an absurdity." Certainly it is a result which should not be reached unless clearly required by controlling constitutional principles.

The decision of the Supreme Court in Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), indicates that if a person who had been appointed or elected judge did not believe in the existence of God, he could have refused to make the prescribed declaration, and could have obtained his commission by mandamus, as Torcaso did. It does not require a holding that the judges of the various courts of the State of Maryland are not legal and constitutional judges, because they made the declaration at the time they took office. This Court holds that the judges who heard Ralph's case in the Circuit Court for Montgomery County and the judges of the Court of Appeals of Maryland were de jure judges.

Even if they were not de jure judges, they met all the tests of de facto judges. 30A Am.Jur., Judges, §§ 229–231; Norton v. Shelby County, 118 U.S. 425, 444–446, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). The general rule with respect to the validity of the official acts of de facto judges is set out in 30A Am.Jur., Judges, § 234, as follows: "It is the general rule that acts performed by a de facto judge are not invalid. A judge de facto is, to all intents and purposes, a judge de jure as to all persons except the state. Thus, the official acts of a de facto judge are just as valid for all purposes as those of a de jure judge, so far as the public or third persons who are interested therein are concerned, and their validity may not be collaterally attacked." In McDowell v. United States, 159 U.S. 596, 601, 16 S.Ct. 111, 112, 40 L.Ed. 271 (1895), the Supreme Court stated: "Judge Seymour must be held to have been a judge *de facto*, if not a judge *de jure*, and his actions as such, so far as they affect third persons, are not open to question. Ball v. United States, 140 U.S. 118, 129 [11 S.Ct. 761, 35 L.Ed. 377]; Norton v. Shelby County, 118 U.S. 425 [6 S.Ct. 1121, 30 L.Ed. 178]; Hunter's Adm'r v. Ferguson's Adm'r, 13 Kansas, 462."

■ Even where a judge is disqualified to sit in a particular case, his acts are not void, but voidable. 30A Am.Jur., Judges, § 216; Sexton v. Barry, 6 Cir., 233 F.2d 220, 224–225 (1956). An attack on the composition of the Court in this case would require a showing of a

likelihood of prejudice.[6]  No attack on the judges on the basis of judicial bias has been or could be made.

### III

In the former petition filed herein, Ralph attacked the confession which had been admitted in evidence at his trial. This Court said:

"As both the State Courts and this Court have found, on two separate records, the police used no coercive pressures or inducements to secure a confession in this case.  No claim of denial of the right to call friends or counsel has been or could properly be made on the facts shown by the evidence.

"This Court finds and holds that no constitutional right was violated by Ralph's arrest or his subsequent detention and interrogation." 218 F.Supp. 932, 938 (1963).

The Fourth Circuit held that Ralph's arrest was lawful, that his confession was not rendered inadmissible because of delay in presenting him to a magistrate, and that his confession was freely and voluntarily made.  335 F.2d 128, 141 (1964).  The opinion of the Fourth Circuit was rendered on July 16, 1964, after the decision of the Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758 (1964).  The Supreme Court denied certiorari.  Ralph v. Pepersack, 380 U.S. 925, 85 S.Ct. 907 (1965).

Ralph's present contention is that this Court should follow United States ex rel. Russo v. New Jersey, 3 Cir., 351 F.2d 429 (1965), cert. granted U.S., and People v. Dorado, 62 Cal.2d 338, 42 Cal.Rptr. 169, 398 P.2d 361 (1965), cert. den. 381 U.S. 937, 85 S.Ct. 1765, 14 L.Ed.2d 702 (1965).

There are five reasons why this Court should not follow those decisions.

(a) The decision of the Fourth Circuit on this point, rendered after Es-

cobedo, on appeal from the denial by this Court of the former petition filed by Ralph, is res judicata and binding on this Court in the absence of newly discovered evidence.

(b) The opinion of the Fourth Circuit in Davis v. State of North Carolina, 339 F.2d 770 (1964), is binding on this Court, and adopts a rule contrary to the decisions in Russo and Dorado.

(c) The better-reasoned cases throughout the country are contrary to Russo and Dorado.  See, e. g., United States v. Childress, 7 Cir., 347 F.2d 448 (1965); United States v. Cone, 2 Cir., 354 F.2d 119 (1965).

(d) Most of the Courts which have considered the question since Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), have held that if any change is to be made in the rule with respect to the admissibility of confessions as sweeping as the change which would be required by Russo and Dorado, the interest of the public requires that such change should be applied prospectively and not retrospectively.  See, e. g., United States ex rel. Walden v. Pate, 7 Cir., 350 F.2d 240 (1965); Carrizosa v. Wilson, N.D.Cal., 244 F.Supp. 120 (1965); Wade v. Yeager, D.N.J., 245 F.Supp. 67 (1965); United States ex rel. Conroy v. Pate, N.D.Ill., 240 F.Supp. 237, 240 (1965).

(e) This Court believes that Russo and Dorado were not properly decided, and that this Court should follow the cases set out in (b) and (c) above.  See, e. g., Application of DeToro, D.Md., Northrop, J., 247 F.Supp. 840, filed November 16, 1965.

Final action on the present petition will not be taken at this time, and petitioner is hereby remanded to the custody of respondent;  but the stay of execution granted by this Court is continued until further order of this Court, upon the condition that petitioner present to the ap-

---

6.  It does not appear that anyone who was considered for appointment was ever passed over because of his lack of belief, nor that anyone has been deterred from becoming a candidate for such a position because of his lack of belief. So far as this Court is advised, no one appointed or elected to the position of judge in Maryland has ever refused to declare his belief in the existence of God.

propriate State Court a petition for relief under the PCPA, based upon the first ground relied on herein, within thirty days from the date of this opinion, and file a timely application for leave to appeal from any denial of such petition. After final decision in the state proceeding he will be heard again, if necessary.