WATTS *v.* STATE
HUSK *v.* STATE

(Two Appeals in One Record)

[*No.* 131, September Term, 1963.]

*Decided December 16, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Nathan Stern* for the appellants.

*Russell R. Reno, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *George J. Helinski, Assistant State's Attorney,* on the brief, for the appellee.

PER CURIAM.

The lower court, at a trial without a jury, found the defendants guilty of conspiracy under one indictment and of larceny under another indictment. Claiming that the court erred in finding them guilty on the uncorroborated testimony of an accomplice, both defendants appealed.

In a telephone call received by the police on July 12, 1962, they were informed that the Ace Currency Exchange had been held up and robbed. On their arrival at the exchange, the employee in charge told the police that she had been alone at the time of the holdup, that the robbers had forced her at gun point to hand over $7000 in cash, and that the robbers then made her sit down on her hands and taped her legs. But, four days later, when she was again questioned, she told the police that she and the defendants had planned a "fake holdup" and that on the day of the alleged robbery she had, in accordance with the plan, turned over the stolen money to one of the defendants, taped herself, waited a few minutes, and then called the police.

Since not much in the way of corroboration is required to substantiate the testimony of an accomplice, *Wright v. State,* 219 Md. 643, there was ample evidence in the instant case to support the testimony of the accomplice as to some of the material facts tending to show that the defendants were identifiable with her and had participated in the conspiracy and theft.

The testimony of the accomplice that the defendants had met with her on several occasions in her apartment, when the faked robbery was planned, was supported by another witness who had been in the apartment at a time when one of the defendants was also there. The testimony that during the week preceding the theft there had been several telephone calls each day by the defendants to ascertain if the accomplice was alone was substantiated by several witnesses who had seen one or the other or both of the defendants in the vicinity of the exchange during that week. The testimony as to the receipt of a telephone call from one of the defendants on the very day of the theft to ascertain if the coast was then clear was corroborated by a police officer who was at the exchange when the call was re-

ceived and the guarded responses to it were made. The testimony that the defendants had planned to go to New Jersey after the theft was verified by a witness who saw them there on July 13. The testimony that the accomplice was to receive $1000 as her share of the stolen money was corroborated by another police officer when upon her arrest the accomplice accounted to him for that exact sum. Moreover, there was corroboration in the unexplained fact that each of the defendants purchased a Cadillac automobile in the afternoon of the day of the faked robbery and paid part of the substantial down payments in $20 bills (a large portion of the stolen money was in bills of that denomination) when theretofore they had been unemployed.

We hold that the testimony of the other witnesses was sufficient to corroborate the testimony of the accomplice.

*Judgments affirmed.*